UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
LIDIETH MOJICA,              .    Civil Action No. 1:15cv1110
                             .
              Plaintiff,     .
                             .
     vs.                     .    Alexandria, Virginia
                             .    October 30, 2015
SWIFTSHIPS, LLC; KHURRAM SHAH,.   10:02 a.m.
CALVIN LELEUX, and JEFFREY   .
LELEUX,                      .
                             .
              Defendants.    .
                             .
.  .  .  .  .  .  .  .  .  .  .
```

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFF:              PETER C. COHEN, ESQ.
                                Charlson Bredehoft Cohen &
                                Brown, P.C.
                                11260 Roger Bacon Drive
                                Suite 201
                                Reston, VA 20190


FOR THE DEFENDANTS:             ANDREW ZIMMITTI, ESQ.
                                Manatt, Phelps & Phillips, LLP
                                1050 Connecticut Avenue, N.W.
                                Washington, D.C. 20036


OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
                                U.S. District Court, Fifth Floor
                                401 Courthouse Square
                                Alexandria, VA 22314
                                (703)299-8595


(Pages 1 - 10)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1                    P R O C E E D I N G S

2            THE CLERK:  Civil Action 15-1110, Lidieth Mojica v.

3    Swiftships, LLC, et al.  Will counsel please note their

4    appearances for the record.

5            MR. COHEN:  Good morning, Your Honor.  Peter Cohen

6    for the plaintiff.

7            THE COURT:  Good morning.

8            MR. ZIMMITTI:  Good morning again, Your Honor.

9    Andrew Zimmitti for the defendant Swiftships and the three

10   individual defendants.

11           THE COURT:  And this is your first day in court after

12   I first swore you in.

13           MR. ZIMMITTI:  Yes, it is.  I'm privileged to have

14   you as not only the first judge in the Eastern District but

15   also my practice as a licensed attorney in Virginia.  So thank

16   you very much.

17           THE COURT:  Well, this is a difficult case for you to

18   have as your first one in front of this Court.  I'm not

19   underestimating how difficult this might be.  Aren't you and

20   Mr. Cohen talking about resolving this case?

21           MR. ZIMMITTI:  Yes, Your Honor.  We have and we

22   continue those discussions.

23           THE COURT:  And you haven't yet reached an agreement?

24           MR. ZIMMITTI:  Well, Your Honor, we, we have not yet.

25   This is a case in which the allegations, which are clear, are

1    contested very clearly on the basis of consent, and --

2            THE COURT:  All right.  Let's just talk a little bit

3    about that.

4            MR. ZIMMITTI:  Yes.

5            THE COURT:  When did the -- when do you believe the

6    relationship between the plaintiff and Mr. Shah ended?

7            MR. ZIMMITTI:  Well, Your Honor, we are, we are aware

8    that it continued through the time that the plaintiff was

9    employed.  As to when it specifically ended, it may have ended

10   at -- we're not completely clear, but it may have continued on

11   past her employment.  We just -- I'm not prepared to say

12   exactly when that endpoint was because it did, it did continue,

13   the communications did continue through, through the term of

14   her employment.

15           THE COURT:  Two-way communications?

16           MR. ZIMMITTI:  Yes, Your Honor.

17           THE COURT:  Do you have e-mails, in particular, do

18   you have any photographs sent by the plaintiff to your client

19   of a similar nature?

20           MR. ZIMMITTI:  We have text messages, Your Honor,

21   some text messages that show the nature of the relationship was

22   consensual.  We also -- which we have discussed.  Photographs

23   were exchanged as well.

24           THE COURT:  The same type of photographs?

25           MR. ZIMMITTI:  Not precisely, but we believe that,

1    that they may have been, Your Honor, and we're in the process

2    of trying to ascertain precisely the full scope of, of those

3    communications, but one thing that does come through clearly

4    with respect to the communications that we know -- that we have

5    are that it was a welcomed exchange, that it was not in any way

6    deemed offensive, and that both parties understood, and I don't

7    like to -- I shouldn't use the term "appreciated," but

8    understood the nature of the communications and understood that

9    they were going back and forth in the connection of a

10   consensual relationship.

11        THE COURT:  All right.  Mr. Cohen, do you want to

12   address that issue a little bit?

13        MR. COHEN:  Sure.

14        THE COURT:  You can both see where I'm going.  I'm

15   going to save you an appearance in court in terms of the

16   plaintiff's motion to strike, which has been briefed, and

17   there's no sense having you come back to court week after week.

18   So since you're here today, I'm just going to take care of that

19   and also give you the push to see if you can resolve this case.

20        So, Mr. Cohen, what do you say about the

21   consensual -- you can have a seat, sir -- the allegations that

22   your client was involved in a consensual relationship both

23   before and during her employment with Mr. Shah?

24        MR. COHEN:  It's untrue.

25        THE COURT:  Okay.

1      MR. COHEN:  The evidence is not going to show that.

2  Ms. Mojica is adamant that there was no sexual relationship, no

3  romantic relationship.

4      THE COURT:  At any point?

5      MR. COHEN:  At any point.  She will acknowledge and

6  she will explain in the case that she was confused on how to

7  handle this situation, as many women are in this kind of a

8  situation, that HR was of no support, and that, and that there

9  may have been times in this case where she acted in less than a

10 perfect manner, but the evidence is not going to show that

11 there's any romantic or sexual relationship.

12      This was a difficult relationship for her to be in.

13 He was the CEO of the company.  This case is not just about

14 her.  This is a hostile work environment.  He engaged in this

15 kind of, shall I say, predatory conduct towards several women

16 in the workplace.

17      THE COURT:  Have you talked with any of those other

18 women yet?

19      MR. COHEN:  We have.

20      THE COURT:  All right.  I mean, again, the

21 allegations in this case are very strong.  It's one of the

22 strongest complaints in terms of the detail of what was going

23 on is not normally appearing in a complaint, and for what it's

24 worth, and I think the defendant should consider this, the

25 docket clerk who was initially assigned this case and had to

1    upload the still photographs found them so objectionable that

2    we had to assign that docketing to another person.

3              I put that out there because a jury will be made up

4    of similar types of folks, and it's going to be very difficult

5    for the defendant, unless the defendant literally can hit the

6    home run by showing that there was a consensual sexual

7    relationship between the plaintiff and the defendant, this case

8    will have very, very difficult issues with the jury, and so for

9    those reasons, that's why this is the type of case that's

10   extremely, in my view, well positioned for early settlement.

11             Now, you've also alleged in the amended complaint,

12   Mr. Cohen, that at one point, Mr. Shah offered your client

13   money to walk away from this case?

14             MR. COHEN:  That's correct.

15             THE COURT:  I assume that was done verbally and not

16   in writing?

17             MR. COHEN:  There was some e-mail exchange.  It

18   wasn't from Mr. Shah, the CEO.  It was from his brother, who

19   was the CFO of the company.

20             The evidence, I mean, I can proffer to the Court that

21   the evidence will likely show in this case that this was sort

22   of a method that the CEO, Mr. Shah, the alleged harasser, used

23   with respect to the women, that he used money in order to pay

24   for a variety of things which are described in the, in the

25   amended complaint.

1      THE COURT:  How much did he offer your client, if you

2 know?

3      MR. COHEN:  It was, I believe, a so-called

4 consultancy position for about $100,000.

5      THE COURT:  All right.

6      MR. COHEN:  Or thereabout.

7      THE COURT:  All right.  Again, Judge Buchanan -- and

8 it's -- I want to assure both parties the computer assigns

9 cases.  The fact that this case got the only two female judges

10 in the courthouse is ironic, but that's what you're stuck with.

11      But Judge Buchanan is a very, very astute mediator.

12 She's available to assist you.  I also know that we have a lot

13 of very good private practitioners who are out there who are

14 offering mediation services.

15      You know, starting December 1, there are going to be

16 some new, interesting rules of discovery, especially this issue

17 about proportionality which I'm sure you are both aware of, but

18 we are going to become far more aggressive in reviewing the

19 merits of cases early on and trying to work with counsel in

20 making a wise assessment as to how much money should be

21 invested in transaction costs considering the potential

22 recovery, etc.

23      You ought to start really early on thinking about the

24 value of this case, and both sides, in my view, to best serve

25 your clients' interests, because this is a fee-shifting kind of

1  case as well, so defense has to keep that in mind, should

2  really start early and aggressively thinking about how to

3  resolve this case.

4          MR. COHEN:  Your Honor, may I speak to settlement

5  first?

6          THE COURT:  Yeah.

7          MR. COHEN:  The parties have had discussions about

8  it, and I can represent to the Court without getting into

9  details that the parties were close, and a suggestion was made

10 to perhaps meet in the middle and call it a day, and that was

11 rejected.  So --

12         THE COURT:  Well, again, what I have found in my

13 experience as a mediator is it's really unfortunate when the

14 parties -- did you get close by yourselves, or did you have a

15 mediator helping you?

16         MR. COHEN:  Ourselves.

17         THE COURT:  That's fantastic.  Then you should

18 immediately, rather than letting that dissipate, get before a

19 neutral, who can perhaps, you know, give you the extra push

20 that you need to reach the compromise.

21         So as I said, rather than starting to spend a lot of

22 money and time on discovery and all the depositions that will

23 be necessary -- I mean, the defense has to consider among other

24 things, because, you know, I've had Swiftships in another case,

25 it's a defense contractor.  A company with that relationship

1  with the U.S. government does not want to have these types of

2  allegations being fleshed out.

3          And frankly, if the HR department is as unresponsive

4  as the complaint alleges it to be, then Swiftships needs to do

5  a lot of very careful self-evaluation, because if what

6  Mr. Cohen says in his complaint is accurate, there may be

7  potentially other cases out there.  It needs to get cleaned up

8  if, in fact, this is really going on.

9          In any case, let me rule on the motions that you're

10 here for today just to clear things up.  The actual motion

11 that's still technically here was the plaintiff's motion for

12 leave to file the attachments on a disc.  Because of the way

13 that technology works in this court, I'm simply going to have

14 the disc kept in the vault, so it's part of the record of this

15 case, but we're not going to actually electronically merge it

16 into the case file.

17         The other exhibits we have permitted you to file

18 under seal, they've already been uploaded.  As I said, we had

19 to get a different docket clerk to do it.  So the motion,

20 docket No. 26, is granted, with the understanding that the

21 physical disc will just stay in the court.

22         I'm also going to address the plaintiff's motion to

23 strike certain denials.  I'm going to deny that motion, and,

24 quite frankly, should you not settle and should the case go to

25 trial and should the evidence be that there wasn't a consensual

1  relationship or other basis to justify the documents, the

2  sending of those photographs and the videos, that the answer is

3  the way it is can come back to haunt.  I have seen lawyers very

4  successfully use both complaints by plaintiffs or answers by

5  defendants as very effective ways of undercutting the

6  credibility of the position taken into the courtroom, and I

7  think lawyers have to think very carefully about what they put

8  in their pleadings because those are affirmative statements on

9  behalf of the client, and they can come back to haunt the

10 client at litigation.

11          So I'm going to deny that motion.  It doesn't in any

12 respect prejudice the plaintiff.  We'll leave it as it is, but

13 again, I recommend that you strongly think about resolving the

14 case.  All right?

15          MR. COHEN:  Thank you, Your Honor.

16          MR. ZIMMITTI:  Thank you, Your Honor.

17          THE COURT:  Thank you.

18                      (Which were all the proceedings

19                       had at this time.)

20

21              CERTIFICATE OF THE REPORTER

22     I certify that the foregoing is a correct transcript of

23 the record of proceedings in the above-entitled matter.

24

25                      _____
                                /s/
                        Anneliese J. Thomson